# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVE C., KELLY W., JANE DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC.,<br><br>Defendant. | CLASS ACTION COMPLAINT |

Plaintiffs Steve C. ("Steve"), Kelly W. ("Kelly"), and Jane Doe ("Jane") (collectively "Plaintiffs"), individually and as representatives of the class of similarly situated individuals, complain and allege against Defendant Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBSMA") as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiffs Steve, Kelly, and Jane are natural persons residing in Norfolk County, Massachusetts and are citizens of the Commonwealth of Massachusetts. Steve and Kelly are Jane's parents.

2. Defendant BCBSMA is an insurance company existing under the laws of the Commonwealth of Massachusetts headquartered in Boston, Suffolk County, Massachusetts, and was the insurer and claims administrator for the health plan providing healthcare coverage for Steve, Kelly and Jane ("the Plan") during the treatment that is the subject of this litigation.

1

3. The Plan is a fully-insured employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). Steve and Kelly were participants in the Plan and Jane was a beneficiary of the Plan at all relevant times.

4. Jane received medical care and treatment at La Europa Academy ("La Europa"). La Europa is a licensed residential treatment center in Utah that provides inpatient treatment to adolescent girls with mental health, behavioral, or substance abuse challenges.

5. BCBSMA improperly denied claims for payment of Jane's medical expenses in connection with her treatment at La Europa.

6. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7. Venue is appropriate under 29 U.S.C. §1132(e) (2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, and because BCBSMA is headquartered in Massachusetts, and the Plaintiffs reside in the Commonwealth of Massachusetts.

8. BCBSMA is one of the largest health insurers in the United States. It provides group health insurance coverage and acts as an administrator of health insurance policies for thousands of insureds.

**NATURE OF THE CASE**

9. This action is brought to correct BCBSMA's systematic denial of payment of claims for inpatient intermediate mental health residential treatment for mental health disorders in violation of the terms of its insurance policies and the self-funded medical benefits plans

it administers ("Class Policies").[1] BCBSMA's Class Policies state that it pays for "intermediate" inpatient treatment for mental health and substance use disorders, which "may include, (but is not limited to)…acute residential treatment." However, its interpretation of this language is to exclude any and all residential treatment other than what BCBSMA characterizes as "acute residential treatment." This violates the plain language of the Class Policies as well as the federal Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"). BCBSMA's action is an impermissible nonquantitative treatment limitation on mental health and substance use disorders that has no counterpart in the limitations to coverage BCBSMA imposes for intermediate inpatient treatment of medical/surgical conditions such as inpatient skilled nursing facility stays, rehabilitation hospitals, and hospice care.

### FACTUAL BACKGROUND AND RELEVANT POLICY LANGUAGE

10. Residential treatment is an intermediate level of inpatient mental health and substance use disorder treatment commonly provided to adolescents, whose conditions do not present an imminent threat to themselves or others to the degree that acute inpatient

---

[1] In accordance with the class definitions below, the term Class Policies as used herein refers to BCBSMA policies that contain this same or similar language (which includes Plaintiffs' policy under the Plan):

> **Intermediate Treatments**
> There may be times when you will need *medically necessary* care that is more intensive than typical *outpatient* care. But, you do not need 24-hour *inpatient* hospital care. This "intermediate" care may include (but is not limited to):
> - Acute residential treatment. Your coverage for this treatment is considered to be an *inpatient* benefit. During the *inpatient* pre-service review process (see Part 4), *Blue Cross Blue Shield HMO Blue* will assess your specific health care needs. The least intensive type of setting that is required for your *mental condition* will be approved by *Blue Cross Blue Shield HMO Blue*.
> - Partial hospital programs or intensive outpatient programs. Your coverage for these programs is considered to be an *outpatient* benefit.

hospitalization is required, but who still require medically necessary inpatient care in order to treat their illnesses.

11. Residential treatment facilities are specialized programs subject to licensing standards by the states in which they are located. Residential treatment facilities are well accepted within the mental health and substance use disorder community as providing medically necessary inpatient treatment at an "intermediate" level.

12. BCBSMA's Class Policies provide coverage for inpatient intermediate residential treatment of mental health and substance use disorders. However, BCBSMA interprets the language of the Class Policies in a way that improperly limits that coverage to only what it characterizes as "acute residential treatment" to the exclusion of sub-acute residential treatment that is medically necessary.

13. The section of the Class Policies titled "Intermediate Treatments" states:[2]

> **Intermediate Treatments**
> There may be times when you will need *medically necessary* care that is more intensive than typical *outpatient* care. But, you do not need 24-hour *inpatient* hospital care. This "intermediate" care may include (but is not limited to):
> - Acute residential treatment. Your coverage for this treatment is considered to be an *inpatient* benefit. During the *inpatient* pre-service review process (see Part 4), *Blue Cross Blue Shield HMO Blue* will assess your specific health care needs. The least intensive type of setting that is required for your *mental condition* will be approved by *Blue Cross Blue Shield HMO Blue.*
> - Partial hospital programs or intensive outpatient programs. Your coverage for these programs is considered to be an *outpatient* benefit.
>
> If you would normally pay a *copayment* for *inpatient* or *outpatient* benefits, the *copayment* will be waived when you get covered intermediate care. But, you must still pay your *deductible* and/or *coinsurance*, whichever applies.

14. BCBSMA offers comparable intermediate level care coverage for medical/surgical treatment analogous to the sub-acute level of care offered in residential treatment

---

[2] Italicized words are defined terms under the plan document.

facilities for mental health and substance use disorders. Under the same *Covered Services* section of the plan document, BCBSMA lists the requirements for treatment in a Rehabilitation Hospital or Skilled Nursing Facility. It states:

> **Rehabilitation Hospital Admissions**
> You and your health care provider must receive approval from *Blue Cross Blue Shield HMO Blue* as outlined in this Subscriber Certificate before you enter a rehabilitation hospital for *inpatient* care. *Blue Cross Blue Shield HMO Blue* will let you and your health care provider know when your coverage is approved (See Part 4.) When *inpatient* care is approved by *Blue Cross Blue Shield HMO Blue,* this health plan provides coverage only until you reach your *benefit* limit. The *Schedule of Benefits* for your plan option describes the *benefit limit* that applies for these *covered services.* (Also refer to riders –if there are any–that apply to your coverage in this health plan.) Once you reach this *benefit limit*, no more benefits will be provided for these services. This is the case whether or not the care is *medically necessary*. (Whether or not your plan option has a *benefit limit* for these services, coverage is provided only for those services that are determined by *Blue Cross Blue Shield HMO Blue* to be *medically necessary* for you.) This coverage includes: semiprivate *room and board* and *special services* furnished for you by the hospital; and medical care furnished for you by a physician or by a nurse practitioner.
>
> **Skilled Nursing Facility Admissions**
> You and your health care provider must receive approval from *Blue Cross Blue Shield HMO Blue* as outlined in this Subscriber Certificate before you enter a skilled nursing facility for *inpatient* care. *Blue Cross Blue Shield HMO Blue* will let you and your health care provider know when your coverage is approved (See Part 4.) When *inpatient* care is approved by *Blue Cross Blue Shield HMO Blue,* this health plan provides coverage only until you reach your *benefit* limit. The *Schedule of Benefits* for your plan option describes the *benefit limit* that applies for these *covered services.* (Also refer to riders –if there are any–that apply to your coverage in this health plan.) Once you reach this *benefit limit*, no more benefits will be provided for these services. This is the case whether or not the care is *medically necessary*. (Whether or not your plan option has a *benefit limit* for these services, coverage is provided only for those services that are determined by *Blue Cross Blue Shield HMO Blue* to be *medically necessary* for you.) This coverage includes: semiprivate *room and board* and *special services* furnished for you by the facility; and medical care furnished for you by a physician or by a nurse practitioner.

15. Although treatment at skilled nursing facilities, rehabilitation hospitals, and mental health residential treatment facilities is covered under the plan document, only in the case of

residential mental health treatment facilities does BCBSMA limit coverage to "acute residential treatment."

16. The effect of BCBSMA's overly restrictive interpretation of the "Intermediate Treatments" language of the plan document relating to mental health disorders is to routinely deny all mental health residential treatment claims that it deems as not "acute" irrespective of medical necessity. This is contrary to the definition of "medically necessary" treatment and generally accepted standard of professional medical practice. It is also contrary to the express language of the "Intermediate Treatments" clause of the plan document that states coverage for intermediate mental health and substance use disorder treatment "may include (but is not limited to) . . . [a]cute residential treatment."

17. This case seeks to correct the systemic practice employed by BCBSMA of denying or limiting inpatient intermediate mental health residential treatment by asserting that the Class Policies only cover "acute residential treatment" when that practice (1) is not permitted under the language of the Class Policies and (2) violates the requirements of MHPAEA since no equivalent restriction is placed on intermediate levels of non-mental health treatment such as inpatient stays at skilled nursing facilities or rehabilitation facilities.

**FACTS REGARDING JANE'S RESIDENTIAL TREATMENT CLAIM**

18. Jane struggled with regulating her emotions from the time she was a young child.
19. She struggled with anxiety, tantrums, and was easily overwhelmed.
20. As she grew older she began to see Dr. Meghan Cuff, a psychologist, who diagnosed her with depression, anxiety, and obsessive-compulsive disorder ("OCD"), among other mental health disorders.

6

21. When Jane started high school her anxiety and OCD behaviors increased. She began to isolate herself in her bedroom and withdraw from her family.

22. Notwithstanding treatment on an intensive outpatient basis from a variety of providers, Jane's symptoms of depression, anxiety, and OCD became more serious in early 2015. She experienced suicidal ideation and began cutting herself.

23. In the Fall of 2015 she began to refuse to take her medications and her depression and anxiety increased.

24. Despite intensive efforts to stabilize her condition, Jane's condition continued to deteriorate. Jane's health care providers helped Steve and Kelly identify La Europa as a residential treatment center that would be a good match for Jane's 24 hour a day residential treatment needs.

25. When Steve and Kelly informed Jane of their decision to have her admitted to La Europa, she attempted suicide by ingesting a handful of anti-depressants she had been hiding in her room. After being stabilized over several days at a hospital in the Commonwealth of Massachusetts, and on the advice of her treatment team she was transported with an escort to La Europa and was admitted on February 26, 2016.

26. Steve and Kelly submitted claims for Jane's treatment at La Europa, and initially BCBSMA agreed to pay the first sixteen days of her treatment. However, for treatment provided after March 14, 2016, BCBSMA denied coverage asserting that Jane's treatment was not medically necessary.

27. In a letter dated September 22, 2016, Steve and Kelly appealed the denied claim. They submitted detailed information from a long list of Jane's clinicians, from before the time

Jane started treatment, as well as records during her treatment at La Europa, to show that her treatment was medically necessary.

28. In response to Steve and Kelly's appeal, BCBSMA changed their basis for denial. BCBSMA asserted for the first time in its October 31, 2016, letter that it had made a mistake and that it would pay nothing for the La Europa treatment because irrespective of medical necessity issues, "no benefits are available on your health plan for this type of provider, *even when it is medically necessary*." (Emphasis added).

29. BCBSMA wrote in part:

> …Upon review of your appeal, we have determined that our earlier clinical denial was issued because we believed at that time that the service was an acute residential admission, so that was why we reviewed the request against the criteria for acute residential psychiatric stays.
>
> During the member appeal process, our doctor determined that this does not appear to be a request for acute residential psychiatric stay, but is an intermediate residential facility with subacute treatment, which is not a covered type of provider on your health plan…
>
> [A]fter considering her situation, the doctor has denied coverage because the subacute residential treatment is not a covered type of service on your health plan.

30. Steve and Kelly, on behalf of themselves and Jane, attempted to appeal BCBSMA's final denial in a letter dated March 21, 2017. They quoted the language of the Plan documents stating that "intermediate treatment" for mental health and substance abuse treatment was covered. They went on to argue that BCBSMA's application of the "acute" residential treatment limitation violated MHPAEA and the insurance policy.

31. Steve and Kelly pointed out in their March 21, 2017, letter that the Plan covered other intermediate sub-acute inpatient levels of care for medical or surgical conditions such as

skilled nursing facilities and rehabilitation treatment and that these were levels of care for medical or surgical treatment that were analogous to residential treatment for mental health and substance use disorders at facilities such as La Europa.

32. Steve and Kelly also provided a copy of the license issued for La Europa by the Utah State Department of Human Services showing that La Europa was licensed as a "Residential Treatment" facility for youth from ages 14 through 17 during the time Jane was treated.

33. BCBSMA never responded to Steve and Kelly's attempt at a second appeal in writing. A representative from BCBSMA called Steve and Kelly and told them BCBSMA would not be responding to the second appeal. In addition, in accordance with its change of position between the initial claim decision and the final appeal decision, BCBSMA never paid for the first sixteen days of Jane's treatment since La Europa was deemed to be "subacute residential treatment" that was not covered "even when it is medically necessary."

34. Over the ten and a half month period she received medically necessary treatment at La Europa, Jane experienced great progress and has become more functional.

35. Steve and Kelly paid in excess of $185,000 for Jane's treatment at La Europa that BCBSMA should have paid but refused to pay.

36. Steve and Kelly, on behalf of themselves and their daughter Jane, exhausted their pre-litigation appeals as required under the Plan and ERISA.

**CLASS ALLEGATIONS**

37. BCBSMA's systematic practice of denying coverage for inpatient intermediate residential treatment on the basis that only "acute residential treatment" is covered violates the terms of the ERISA governed Class Policies as well as the MHPAEA.

38. As a result of these actions, BCBSMA systematically and improperly denies coverage for mental health treatment in residential treatment facilities under the BCBSMA ERISA governed Class Policies.

39. BCBSMA's systematic actions in violation of MHPAEA, ERISA and the terms of the Class Policies, as outlined above, are breaches of its fiduciary duties to the participants and their beneficiaries found at 29 U.S.C. §§ 1104(a)(1)(A) and (a)(1)(D).

40. In addition to Plaintiffs, on information and belief, more than 100 insureds under BCBSMA ERISA health insurance policies have had mental health residential treatment claims improperly denied based on BCBSMA's limitation of inpatient intermediate residential treatment to only "acute residential treatment" to the exclusion of sub-acute treatment. Thousands more are generally insured under BCBSMA ERISA governed health insurance Class Policies and, absent Court intervention, will face BCBSMA's improper actions if they are to file a claim in the future.

41. Plaintiffs seek certification of the following two classes under F.R.C.P 23(b)(1) and (b)(2):

Class I: All current BCBSMA ERISA governed health insurance beneficiaries covered by a health insurance policy that contains this same or similar language:

> **Intermediate Treatments**
> There may be times when you will need *medically necessary* care that is more intensive than typical *outpatient* care. But, you do not need 24-hour *inpatient* hospital care. This "intermediate" care may include (but is not limited to):
>
> - Acute residential treatment. Your coverage for this treatment is considered to be an *inpatient* benefit. During the *inpatient* pre-service review process (see Part 4), *Blue Cross Blue Shield HMO Blue* will assess your specific health care needs. The least intensive type of setting that is required for your *mental condition* will be approved by *Blue Cross Blue Shield HMO Blue.*

- Partial hospital programs or intensive outpatient programs. Your coverage for these programs is considered to be an *outpatient* benefit.

Class II: All former or current BCBSMA ERISA governed health insurance beneficiaries who are, or were, covered by a health insurance policy that contains this same or similar language, and who had a claim for mental health residential treatment denied on the basis, at least in part, that the treatment provided was not "acute residential treatment" and/or was sub-acute treatment:

> **Intermediate Treatments**
> There may be times when you will need *medically necessary* care that is more intensive than typical *outpatient* care. But, you do not need 24-hour *inpatient* hospital care. This "intermediate" care may include (but is not limited to):
>
> - Acute residential treatment. Your coverage for this treatment is considered to be an *inpatient* benefit. During the *inpatient* pre-service review process (see Part 4), *Blue Cross Blue Shield HMO Blue* will assess your specific health care needs. The least intensive type of setting that is required for your *mental condition* will be approved by *Blue Cross Blue Shield HMO Blue.*
> - Partial hospital programs or intensive outpatient programs. Your coverage for these programs is considered to be an *outpatient* benefit.

42. Class I seeks declaratory relief and an injunction preventing BCBSMA from engaging in the complained of conduct from the date of the injunction.

43. Class II seeks declaratory relief and an injunction requiring BCBSMA to reprocess class members' claims in accordance with the terms of the Class Policies and the MHPAEA.

44. The proposed class action is appropriate for certification under F.R.C.P. 23(a)(1), because the tens of thousands who are covered by BCBSMA ERISA governed Class Policies, and the estimated hundred or more who have faced improper denials as alleged herein, is so numerous that joinder of each of the individuals as a plaintiff is impractical.

45. The proposed class action is appropriate for certification under F.R.C.P. 23(a)(2), because there are questions of law or fact that are common to the class, namely, whether

11

BCBSMA's categorical denial of inpatient intermediate mental health residential treatment claims on the basis that only "acute residential treatment" is covered to the exclusion of sub-acute treatment, is correct under the Class Policies and/or lawful under MHPAEA.

46. Certification of a class action is proper under F.R.C.P. 23(a)(3) because the claims of the Plaintiffs are typical of the members of the proposed class in that the basis for Jane's denial for treatment at La Europa was because, "La Europa Academy is not a covered type of provider on your plan…Specifically, after considering her situation, the doctor has denied coverage because the subacute residential treatment is not a covered type of service on your health plan." BCBSMA also clarified that medical necessity is not a consideration, noting, "no benefits are available on your health plan for this type of provider, even when it is medically necessary."

47. The prerequisite for class action certification identified at F.R.C.P. 23(a)(4) is met in this case, because the named representatives of the proposed class will fairly and adequately protect the interest of the proposed class and Plaintiffs' counsel has adequate experience and background in both health insurance litigation and consumer class action litigation to represent the proposed class.

48. Certification of a class action under F.R.C.P. 23(b)(1) is proper, because prosecution of separate actions by all the individual members of the proposed class would create a risk of inconsistent and varying adjudication with respect to the individuals that would result in incompatible standards of conduct for BCBSMA. For example, if one reviewing court were to decide that BCBSMA's insistence that only "acute residential treatment" is covered under the inpatient intermediate mental health residential treatment benefit, and a

different reviewing court were to decide the opposite, BCBSMA would be facing wholly incompatible standards of conduct when trying to decide an inpatient intermediate mental health residential treatment claim.

49. Similarly, certification of a class action under F.R.C.P. 23(b)(1) is also proper, because if this Court were to only issue a decision on the legal issue raised in Plaintiffs' claim on an individual basis, it would be dispositive of the interests of the other members not parties to the individual adjudication or would substantially impair or impede their ability to protect their interests since legal precedent would be created on the interpretation of policy language common to all class members.

50. Certification of a class action under F.R.C. P. 23(b)(2) is also appropriate, because BCBSMA's uniform practice of denying inpatient intermediate mental health residential treatment claims in sub-acute residential treatment facilities applies generally to the class making final injunctive or declaratory relief appropriate respecting the class as a whole.

## FIRST CAUSE OF ACTION

**(Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))**

51. Plaintiffs incorporate by reference all allegations above as if fully set forth herein.

52. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as BCBSMA, acting as agent of an ERISA plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the ERISA plan. 29 U.S.C. §1104(a)(1).

53. BCBSMA violated the terms of the plan document by denying coverage for inpatient intermediate residential treatment for mental health and substance use disorders in sub-

acute settings irrespective of medical necessity, BCBSMA is disregarding the requirement that the Class Policies both comply with MHPAEA and cover medically necessary intermediate inpatient treatments in accordance with generally accepted standards of professional medical practice.

54. ERISA underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process, which BCBSMA has not done by relying on its categorical exclusion of sub-acute mental health residential treatment claims. 29 U.S.C. §1133(2).

55. BCBSMA also breached their fiduciary duties to the Plaintiffs when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in the Plaintiffs' interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries in accordance with the terms of the plan document and to provide a full and fair review of the Plaintiffs' claims.

56. In addition to Plaintiffs' claims, BCBSMA violates the terms of the Class Policies for all proposed class members when it systemically denies all sub-acute mental health residential treatment claims.

## SECOND CAUSE OF ACTION

**(Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))**

57. Plaintiffs incorporate by reference all allegations above as if fully set forth herein.

58. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA.

59. In general MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than ERISA plan provide for treatment of medical or surgical disorders.

60. Specifically, MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical or surgical benefits and also make unlawful separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

61. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity, restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A) and (H).

62. Comparable benefits offered by the Class Policies for intermediate medical or surgical treatment analogous to the benefits the Class Policies excluded for Jane's treatment (and the similar excluded treatments of all proposed class members) include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of intermediate treatment does BCBSMA exclude coverage on the basis that only "acute" inpatient treatment stays are covered.

63. The actions of BCBSMA in only affording coverage of "acute residential treatment" to the exclusion of sub-acute residential treatment, when assessing mental health claims for inpatient intermediate treatment, violates MHPAEA because BCBSMA's interpretation of the Class Policies does not similarly exclude coverage for individuals receiving

treatment at sub-acute inpatient facilities, such as skilled nursing facilities, for medical or surgical conditions.

64. In this manner, BCBSMA violates 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Class Policies and the medical necessity criteria utilized by the Class Policies and BCBSMA, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

65. The violations of MHPAEA by BCBSMA give the Plaintiffs and other BCBSMA insureds who have been likewise aggrieved, the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to: surcharge, estoppel, restitution, disgorgement, injunction, accounting, constructive trust, equitable lien, declaratory relief, unjust enrichment, and specific performance, together with prejudgment interest pursuant allowed by law, and attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf themselves and the putative Class I and Class II, pray for judgment against BCBSMA as follows:

1. For an Order certifying the proposed Classes under F.R.C.P. 23(b)(1), and (b)(2);
2. For the relief outlined in the First and Second Causes of Action as enumerated above.
3. Declaratory Relief, and an injunction prohibiting BCBSMA from continuing to violate the Class Policies' language as well as the MHPAEA as detailed above.

4. Declaratory relief and an Order requiring BCBSMA to reprocess all Class II members' residential treatment claims.

5. An award of costs, interest and attorneys' fees available under law or statute including 29 U.S.C. §1132(g).

6. For such further relief as the Court deems fair and equitable.

        THE PLAINTIFFS, BY THEIR ATTORNEYS,

        /s/ Brian S. King
        _____
        Brian S. King,
        Utah Bar No. #4610
        Brian S. King, Attorney at Law
        336 South 300 East, Suite 200
        Salt Lake City, UT 84111
        Telephone: (801) 532-1739
        Facsimile: (801) 532-1936
        brian@briansking.com

        /s/ Jonathan M. Feigenbaum
        _____
        Jonathan M. Feigenbaum
        B.B.O. #546686
        Law Offices of
        Jonathan M. Feigenbaum
        184 High Street, Suite 503
        Boston, MA 02110
        Tel. No. (617) 357-9700
        Fax. No. (617) 227-2843
        jonathan@erisaattorneys.com

        /s/ Sean K. Collins
        _____
        Sean K. Collins
        B.B.O. # 687158
        Law Offices of Sean K. Collins
        184 High Street, Suite 503
        Boston, MA 02110
        Telephone: 617-320-8485
        Fax: 617-227-2843
        sean@neinsurancelaw.com