UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STEVE C., KELLY W., JANE DOE, individually and on behalf of all others similar situated, | * * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 1:18-cv-12278-ADB |
| BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC., AND BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC., | * * * * * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiffs Steve C. ("Steve"), Kelly W. ("Kelly"), and Jane Doe ("Jane") (collectively, "Plaintiffs") bring claims individually and as representatives of a putative class of similarly situated individuals against Blue Cross and Blue Shield of Massachusetts, Inc. ("Blue Cross") and Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. ("HMO Blue") (collectively, "Defendants") under the Employee Retirement Income Service Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* [ECF No. 19 ¶ 1]. The Plaintiffs seek benefits under 29 U.S.C. § 1132(a)(1)(B), equitable relief pursuant to 29 U.S.C. § 1132(a)(3), and attorneys' fees under 29 U.S.C. § 1132(g)(1). See generally [ECF No. 19].

Presently before the Court is the Defendants' motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1] [ECF No. 23]. For the reasons explained below, the motion to dismiss, [ECF No. 23], is <u>DENIED</u>.

## I. FACTS AS ALLEGED

The following facts are drawn from the amended complaint, [ECF No. 19], the well-pleaded allegations of which are taken as true for the purposes of evaluating the motion to dismiss. See <u>Ruivo v. Well Fargo Bank, N.A.</u>, 766 F.3d 87, 90 (1st Cir. 2014). This action arises from Jane's mental-health treatment at a residential treatment center.

From the time that she was a young child, Jane struggled to regulate her emotions and experienced anxiety. [ECF No. 19 ¶¶ 12–13]. She was subsequently diagnosed with depression, anxiety, and obsessive-compulsive disorder. [<u>Id.</u> ¶ 14]. Intensive outpatient treatment proved ineffective, as Jane refused to take her medications and by early 2015 was experiencing active suicidal ideation and engaging in self-harm. [<u>Id.</u> ¶¶ 17–19]. Jane's health care providers identified La Europa Academy ("La Europa"), a private boarding school and licensed residential treatment center in Utah for adolescent girls, as a beneficial treatment program. [<u>Id.</u> ¶¶ 21–23]. Upon learning that she would be going to La Europa, Jane attempted suicide. [<u>Id.</u> ¶ 24]. After inpatient treatment at a hospital in Massachusetts for her suicide attempt, Jane was transported to La Europa. [<u>Id.</u> ¶ 25].

At La Europa, Jane received treatment from clinicians in individual therapy, group therapy, family therapy, and a variety of clinical and behavioral treatments which included medication management. [<u>Id.</u> ¶ 28].

---

[1] Though Defendants also characterize their motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), [ECF No. 23 at 1], they make no argument pertaining to that rule in their memorandum in support of the motion, <u>see generally</u> [ECF No. 23-1].

Steve and Kelly submitted claims for Jane's care at La Europa and the Defendants agreed to pay for the first sixteen days of treatment at La Europa. [Id. ¶ 29]. After those first sixteen days, however, the Defendants, on March 14, 2016, denied coverage after determining that Jane's treatment was not "medically necessary." [Id. ¶ 30]. In a letter to the Plaintiffs explaining their decision, the Defendants recognized that Jane had "major depression, generalized anxiety and mood dysregulation," but said that they "could not provide coverage [for La Europa] because we have determined that your child's clinical condition does not meet the medical necessity criteria required for an acute residential psychiatric stay in the area of symptoms/behaviors." [ECF No. 19-2 at 1]. The decision letter noted that Jane's condition met the "InterQual® criteria for treatment at a partial hospital level of care." [Id.]; see also Jon N. v. Blue Cross Blue Shield of Mass., 684 F. Supp. 2d 190, 196 (D. Mass. 2010) ("The InterQual Criteria are utilization review guidelines used widely throughout the industry to determine the level of care required by an individual plan participant. The InterQual Criteria contain initial review guidelines . . . to determine whether the participant qualifies for admission to a particular type of treatment facility, and concurrent review guidelines . . . to determine whether a participant who initially qualified for admission to a treatment facility qualifies for continued care in the facility.").

The Plaintiffs appealed the Defendants' benefits determination, [ECF No. 19 ¶ 33], but the Defendants issued a final adverse-benefit determination on October 31, 2016, meaning that they refused to provide coverage for Jane's treatment at La Europa. [Id. ¶ 34]; see also [ECF No. 19-3]. The Defendants further explained that, even if the treatment were necessary, La Europa was not a "covered type of provider" and the services were not a "covered type of services." [Id. at 2]. The decision letter told the Plaintiffs that, "[a]fter considering your daughter's situation,

we cannot approve your request for benefits for the admission at La Europa Academy from 3/15/2016 forward because no benefits are available on your health plan for this type of provider, even when it is medically necessary." [Id. at 1].  The Defendants determined that La Europa was "an intermediate residential facility with subacute treatment, which is not a covered type of provider on your health plan." [Id. at 2].  Even if it were an acute residential psychiatric stay, however, the decision noted that Jane's "clinical condition does not meet the medical necessity criteria required for an acute residential psychiatric stay in the area of risks and functioning." [Id.].  Finally, it found that "La Europa Academy is not a covered type of provider" under the terms of the plan.  [Id.].  "Specifically, after consider[ing] her situation," a doctor reviewing the request for Defendants

> denied coverage because the *subacute residential treatment is not a covered type of service in your health plan*.  Your health [sic] states that no benefits are provided for residential or other care that is custodial care and services and/or programs that are not medically necessary to treat a mental condition.  Examples of services and programs that are not covered by this health plan are: services that are performed in educational, vocational, or recreational settings; and 'outward bound-type,' 'wilderness,' 'camp,' or 'ranch' programs.

[Id. (emphasis added)].  In total, Steve and Kelly paid over $185,000 for Jane's treatment that they believe should have been covered by the Defendants.  [ECF No. 19 ¶ 35].

Steve and Kelly were participants in a fully insured employer-sponsored health plan administered by Blue Cross HMO.  Under the terms of their ERISA plan, Plaintiffs received benefits for "medically necessary" "covered services" that were not otherwise limited or excluded.  [ECF No. 23-2 at 13].  The plan provides benefits for mental health conditions, ranging from inpatient hospital care through "intermediate care" and outpatient treatment.  [ECF No. 23-2 at 27–28; ECF No. 19 ¶¶ 1, 41].  According to the policy's coverage of intermediate treatments,

There may be times when you will need *medically necessary* care that is more intensive than typical *outpatient* care. But, you do not need 24-hour *inpatient* hospital care. This "intermediate" care may include (but is not limited to):

- Acute residential treatment. Your coverage for this treatment is considered to be an *inpatient* benefit. During the *inpatient* pre-service review process (see Part 4), *Blue Cross Blue Shield HMO Blue* will assess your specific health care needs. The least intensive type of setting that is required for your *mental condition* will be approved by *Blue Cross Blue Shield HMO Blue.*
- Partial hospital programs or intensive outpatient programs. Your coverage for these programs is considered to be an *outpatient* benefit.

If you would normally pay a *copayment* for *inpatient* or *outpatient* benefits, the *copayment* will be waived when you get covered intermediate care. But, you must still pay your *deductible* and/or *coinsurance*, whichever applies.

[ECF No. 23-2 at 28]. The plan includes an exclusion for services "performed in educational, vocational, or recreational settings," which "may be in residential or nonresidential settings" and "may include therapeutic elements and/or clinical staff services . . . ." [Id. at 27].

With regards to medical and surgical treatment, the plan provides the following:

**Rehabilitation Hospital Admissions**
You and your health care provider must receive approval from *Blue Cross Blue Shield HMO Blue* as outlined in this Subscriber Certificate before you enter a rehabilitation hospital for *inpatient* care. *Blue Cross Blue Shield HMO Blue* will let you and your health care provider know when your coverage is approved (See Part 4). When *inpatient* care is approved by *Blue Cross Blue Shield HMO Blue*, this health plan provides coverage only until you reach your *benefit limit*. The *Schedule of Benefits* for your plan option describes the *benefit limit* that applies for these *covered services*. (Also refer to *riders*—if there any—that apply to your coverage in this health plan.) Once you reach this *benefit limit*, no more benefits will be provided for these services. This is the case whether or not the care is *medically necessary*. (Whether or not your plan option has a *benefit limit* for these services, coverage is provided only for those services that are determined by *Blue Cross Blue Shield HMO Blue* to be *medically necessary* for you.) This coverage includes: semiprivate *room and board* and *special services* furnished for you by the hospital; and medical care furnished for you by a physician or by a nurse practitioner.

**Skilled Nursing Facility Admissions**
You and your health care provider must receive approval from *Blue Cross Blue Shield HMO Blue* as outlined in this Subscriber Certificate before you enter a skilled nursing facility for *inpatient* care. *Blue Cross Blue Shield HMO Blue* will

let you and your health care provider know when your coverage is approved (See Part 4).  When *inpatient* care is approved by *Blue Cross Blue Shield HMO Blue*, this health plan provides coverage only until you reach your *benefit limit*.  The *Schedule of Benefits* for you plan option describes the *benefit limit* that applies for these *covered services*.  (Also refer to *riders*—if there are any—that apply to your coverage in this health plan.)  Once you reach this *benefit limit*, no more benefits will be provided for these services.  This is the case whether or not the care is *medically necessary*.  (Whether or not your plan option has a *benefit limit* for these services, coverage is provided only for those services that are determined by *Blue Cross Blue Shield HMO Blue* to be *medically necessary* for you.)  This coverage includes: semiprivate *room and board* and *special services* furnished for you by the facility; and medical care furnished for you by a physician or by a nurse practitioner.

[Id. at 23].

In 2003, the Massachusetts Commissioner of Insurance and the Commissioner of Mental Health issued Bulletin 2003-11, which advises insurers that intermediate mental health services must cover "acute residential treatment, partial hospitalization, day treatment and crisis stabilization licensed or approved by the Department of Public Health or the Department of Mental Health."  [ECF No. 18-6 at 1].  In 2009, the Commissioner additionally advised that insurers do not need to cover "[t]uition-based programs that offer educational, vocational, recreational or personal development activities, such as a therapeutic school."  [ECF No. 18-7 at 4].

The Plaintiffs' first cause of action is brought under 29 U.S.C. § 1132(a)(1)(B) based on alleged (1) systematic denial of all "sub-acute" mental health residential treatment; and (2) failure to provide full and fair review.  [ECF No. 19 at 14].  The Plaintiffs' second cause of action, brought under 29 U.S.C. § 1132(a)(3), claims that the Defendants violated the Paul Wellstone and Pete Domenici Mental Health Parity and Addition Equity Act (the "Parity Act"), which generally requires that ERISA plans provide no less generous coverage for the treatment

of mental health and substance use disorders as they provide for medical or surgical disorders. [Id. at 16–17].  The Plaintiffs also seek attorneys' fees and costs.  [Id. at 18].

The Defendants claim that they rightfully denied coverage because (1) the treatment was not medically necessary; (2) La Europa would be excluded as an educational, vocational, or recreational setting; and (3) La Europa is not a covered provider.  [ECF No. 23-1 at 7].

## II.    PROCEDURAL HISTORY

The Plaintiffs filed their complaint against Blue Cross on October 31, 2018.  [ECF No. 1].  On March 29, 2019, the Defendants moved to dismiss the complaint.  [ECF No. 18].  The Plaintiffs filed their amended complaint on April 18, 2019 and added HMO Blue as a defendant. [ECF No. 19].  The Defendants then moved to dismiss the Plaintiffs' amended complaint on May 24, 2019.  [ECF No. 23].  Plaintiffs opposed on June 24, 2019, [ECF No. 24], and the Defendants replied on July 25, 2019, [ECF No. 25].

## III.   LEGAL STANDARD

To evaluate a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all well-pleaded facts, analyze those facts in the light most hospitable to the plaintiff's theory, and draw all reasonable inferences from those facts in favor of the plaintiff.  U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011).  To avoid dismissal, a complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citation omitted).  The plaintiff's obligation to articulate the basis of her claims "requires more than labels and conclusions . . . ."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The facts alleged, when taken together, must be sufficient to "state a claim to relief that

is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

## IV.    DISCUSSION

### A.    Plaintiffs Have Standing to Pursue Claims Against Blue Cross Blue Shield of Massachusetts

As a preliminary matter, Blue Cross claims that Plaintiffs lack standing to file suit against Blue Cross because Blue Cross did not have control over the medical necessity or benefit decisions. [ECF No. 23-1 at 14]. In order to have standing, the Plaintiffs' injury must be "fairly . . . trace[able] to the challenged action of the defendant . . . ." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (alteration in original) (citation omitted). The Plaintiffs must therefore demonstrate that they were injured by Blue Cross's denial of coverage for Jane's treatment at La Europa or by its decision to deny coverage for certain mental health treatments while covering analogous medical and surgical treatments. See Lewis v. Casey, 518 U.S. 343, 357 (1996) (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1996) ("[N]amed plaintiffs who represent a class 'must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'")).

"ERISA contemplates actions against an employee benefit plan and the plan's fiduciaries. With narrow exception, however, ERISA does not authorize actions against nonfiduciaries of an ERISA plan." Terry v. Bayer Corp., 145 F.3d 28, 35 (1st Cir. 1998) (quoting Santana v. Deluxe Corp., 920 F. Supp. 249, 253 (D. Mass. 1996)). When determining whether a party is a plan fiduciary, the Court must determine whether the defendant "undertakes discretionary tasks

8

related to the plan's management and administration." Livick v. The Gillette Co., 524 F.3d 24, 29 (1st Cir. 2008). "[T]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." Bayer Corp., 145 F.3d at 36 (quoting Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997).

Blue Cross argues that HMO Blue is the only proper defendant because HMO Blue had the responsibility of administering the relevant policy. [ECF No. 23-1 at 15]. According to the Subscriber Certificate, HMO Blue had discretion in "determining the amount, form, and timing of benefits, conducting *medical necessity* reviews, and resolving any other matters regarding [the insured's] right to benefits for *covered services* . . . ." [ECF No. 23-2 at 11, 14 (emphasis in original)]. The Plaintiffs nonetheless argue that "[t]he two Defendant entities are part of one control group and together decide whether to pay healthcare claims," [ECF No. 24 at 15], relying on the fact that Blue Cross and HMO Blue share the same executives and Board of Directors and that every person employed by HMO Blue is also an employee of Blue Cross. [Id.]. The Plaintiffs further maintain that they independently have standing as to Blue Cross because they were injured by the decision to deny coverage for Jane's treatment at La Europa in their specific case but also by the Defendants' blanket exceptions for certain treatments in violation of the Parity Act. [ECF No. 19 at 14–17; ECF No. 24 at 10].

The Defendants assert that it is still HMO Blue and not Blue Cross that "has discretion with regard to 'determining the amount, form, and timing of benefits, conducting *medical necessity* reviews, and resolving any other matters regarding [a claimant's] rights to benefits for *covered services*," is "the entity" responsible for "deny[ing]requests for coverage, and to whom an appeal may be submitted," and is "involved in utilization and pre-service review." [ECF No. 23-1 at 15]. But, even assuming that HMO Blue is the Plaintiffs' plan administrator, the

Plaintiffs, in addition to seeking benefits under their plan, are alleging that the Defendants

violated the Parity Act by systematically denying coverage for sub-acute mental health

treatment, while providing coverage for analogous medical/surgical treatment. Thus,

Defendants' assertions as to the role of HMO Blue do not address Plaintiffs' claim that the Blue

Cross insurance policy itself violates the Parity Act by having a blanket exclusion for sub-acute

mental health treatment but without an analogous exclusion for medical or surgical benefits.

Even if HMO Blue is responsible for conducting individual medical necessity reviews,

Defendants have not argued that HMO Blue was responsible for the blanket policy exclusion.

Plaintiffs have therefore sufficiently alleged that they were injured by the Defendants' decision

to deny coverage, both in their specific case as well as in the policy's blanket exception, and

have standing as to Blue Cross.

### B. Count One: Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B)

In Count One, the Plaintiffs allege that the Defendants failed to comply with their

obligations to "act solely in the Plaintiffs' interest and for the exclusive purpose of providing

benefits to ERISA participants and beneficiaries in accordance with the terms of the plan

document and to provide a full and fair review of the Plaintiffs' claims," [ECF No. 19 ¶ 62], by

"[denying] coverage for inpatient intermediate residential treatment for mental health and

substance use disorders in sub-acute settings irrespective of medical necessity." [Id. ¶ 69].

After reviewing Jane's request for coverage, the Defendants determined that treatment at

an acute or subacute residential psychiatric level of care was not medically necessary. See [ECF

No. 19-3 at 2 ("Our doctor also indicated that if this were an acute residential psychiatric stay,

[Jane] would not meet the InterQual® criteria because her clinical condition does not meet the

medical necessity criteria required for an acute residential psychiatric stay in the area of risks and

functioning.")].  Alternatively, the Defendants concluded that La Europa was not a covered type of provider under the coverage plan.  [Id.].  Thus, the Defendants claim that La Europa was not a covered type of provider and also that Jane's treatment would not qualify for coverage under the plan as "no benefits are provided for residential or other care that is custodial care and services and/or programs that are not medically necessary to treat a mental condition."  [Id.].  Though the Defendants did not make a specific finding regarding what kind of provider La Europa was, its decision letter regarding Jane's appeal explained that "services that are performed in educational, vocational, or recreational settings; and 'outward bound-type,' 'wilderness,' 'camp,' or 'ranch' programs" are not covered.  [Id.].

Plaintiffs allege, first, that the Defendants failed to provide a "full and fair review" under 29 U.S.C. § 1133(2), and, second, that the Defendants failed to comply with their obligations under 29 U.S.C. § 1104 and § 1133 to act within the Plaintiffs' interests and provide benefits in accordance with the plan's terms.  [ECF No. 19 ¶ 62].  Defendants argue that they provided a full and fair review as evidenced by the appeals process, which indicates that they denied coverage not only because Jane's subacute treatment was not covered but also because La Europa, an educational setting, was not a covered type of provider.  [ECF No. 23-1 at 19].  Plaintiffs respond that the Defendants did not in fact rely on La Europa being an educational institution and instead relied on Jane's treatment not being medically necessary for an acute residential psychiatric stay.  [ECF No. 24 at 14].

"ERISA plans may not raise for the first time in litigation grounds for an ERISA benefit denial that are not presented in the pre-litigation appeal process."  [Id. (citing Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 128–29 (1st Cir. 2004)].  "[A] plan administrator, in terminating or denying benefits, may not rely on a theory for its termination or denial that it did

not communicate to the insured prior to litigation." Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc., 852 F.3d 105, 113 (1st Cir. 2017).

Though the Defendants originally denied coverage after determining that Jane's treatment was not medically necessary as required for an acute residential psychiatric stay, [ECF No. 19-2 at 1], the Defendants subsequently determined, on appeal, that the denial on those grounds was in error, as the Plaintiffs were seeking coverage for subacute treatment, [ECF No. 19-3 at 1–2]. Still, the Defendants stood by their denial of coverage because "an intermediate residential facility with subacute treatment . . . is not a covered type of provider on [the Plaintiffs'] health plan." [Id. at 2]. In the alternative, the Defendants determined that "if this were an acute residential psychiatric stay, [Jane] would not meet the InterQual® criteria because her clinical condition does not meet the medical necessity criteria required . . . ." [Id.]. They further determined that "La Europa Academy is not a covered type of provider on your plan" and provided examples of services that were not covered because they "are performed in educational, vocational, or recreational settings." [Id.]. Therefore, it does not appear that this is the first time that the Defendants have raised these grounds for their decision to deny benefits.

Plaintiffs argue that Count One should not be dismissed under Federal Rule of Civil Procedure 12(b)(6), but should instead be resolved on cross motions for judgment on the administrative record. [ECF No. 24 at 2]. Once the parties agree to a final administrative record, the Court would consider motions for summary judgment on an agreed-upon record. [Id.]. Defendants aver that they are not asking the Court to review a decision to deny benefits, but to determine whether Plaintiffs' claims as alleged fail to state a claim sufficient to state a plausible claim for relief. [ECF No. 25 at 6–7].

In Cotten v. Blue Cross & Blue Shield of Mass. HMO Blue, Inc., No. 16-cv-12176, 2018 WL 6416813 (D. Mass. Dec. 6, 2018), Judge Stearns held that he could decide a similar wrongful denial of ERISA benefits claim under Rule 12(b)(6).  In that case, the plaintiffs argued that their children's treatment in "wilderness therapy programs" was improperly excluded from coverage.  Cotten, 2018 WL 6416813, at *1–2.  Judge Stearns found that the insurer's denial of coverage was proper because the relevant policy's recreational exclusion unambiguously disclaimed coverage for "residential or other care that is *custodial care*," including "wilderness" programs.  Id. at *2.

This Court has previously found Cotten distinguishable from cases that require the Court to make a factual determination as to whether the treatment facility "qualifies as a covered residential treatment provider or not."  See Brent S., et al. v. Blue Cross Blue Shield of Massachusetts, Inc., No. 17-cv-1169, 2019 WL 3253357, at *3 (D. Mass. July 19, 2019).  Similarly, this case will require the Court to make a factual determination concerning whether La Europa was a covered institution within the meaning of the policy.  Therefore, "[t]his case, like most ERISA welfare-benefit cases, will turn on the specific factual circumstances of the claim, and should be adjudicated on the record compiled before the plan administrator rather than a truncated record of documents that may be susceptible to judicial notice."  Id.; see also Stephanie C., 852 F.3d at 110 (quoting Denmark v. Liberty Life Assur. Co. of Bos., 566 F.3d 1, 10 (1st Cir. 2009)) ("ERISA benefit-denial cases typically are adjudicated on the record compiled before the plan administrator.").

The Court therefore concludes that it cannot adjudicate Plaintiffs' first cause of action for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) on the record before it and denies Defendants' motion to dismiss Count One.  Even if the Court were to consider the motion on the

merits, however, there remains a dispute of fact about whether the Defendants' relied on the educational setting exclusion in denying coverage, as they argue in their motion to dismiss. See [ECF No. 23-1 at 9, 17–18]. In making their decision, Defendants explained that they "could not approve coverage of this service because [they had] determined that [Jane's] clinical condition does not meet the medical necessity criteria required for an acute residential psychiatric stay in the area of symptoms/behaviors." [ECF No. 19-2 at 1]. The original denial letter makes no reference to the policy's exclusion for educational settings. See generally [ECF No. 19-2]. Therefore, there is also a factual dispute about why the Defendants denied coverage for Jane's treatment at La Europa. The factual disputes preclude the court from resolving the claim at this stage.

### C.     Count Two: Violation of the Parity Act Under 29 U.S.C. § 1132(a)(3)

1.     <u>Whether Plaintiffs have Sufficiently Claimed that the Denial of Benefits Violated the Parity Act</u>

Under the Parity Act, group health plans are required to apply the same treatment limitations and lifetime and annual dollar limits for mental health benefits as they do for medical and surgical benefits. See 29 U.S.C. § 1185a(a)(3)(A)(i)–(ii). Treatment limitations for mental health benefits must be "no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan . . . ." Id. at § 1185a(a)(3)(A)(ii). Therefore there must be parity between mental health benefits and medical/surgical benefits for the same "classification" referring to (1) inpatient, in network; (2) inpatient, out of network; (3) outpatient, in network; (4) outpatient, out of network; (5) emergency care; and (6) prescription drugs. 29 C.F.R. § 2590.712(c)(1)(i), § 2590.712(c)(2)(ii). The law also requires parity in nonquantitative measures, including "[m]edical management standards limiting or excluding benefits based on medical necessity or medical appropriateness"

and "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." 29 C.F.R. § 2590.712(c)(4)(ii)(A), (H). To state a claim under the Parity Act, a plaintiff must allege "that a mental-health treatment is categorically excluded while a corresponding medical treatment is not . . . ." See Vorpahl v. Harvard Pilgrim Health Ins. Co., No. 17-cv-10844, 2018 WL 3518511, at *3 (D. Mass. July 20, 2018) (quoting Bushnell v. UnitedHealth Group, Inc., 17-cv-2021, 2018 WL 1578167, at *6 (S.D.N.Y. March 27, 2018)).

Plaintiffs argue that Blue Cross violates the Parity Act because it provides coverage for "'acute residential treatment' to the exclusion of sub-acute residential treatment, when assessing mental health claims for inpatient intermediate treatment," but "does not similarly exclude coverage for individuals receiving treatment at sub-acute inpatient facilities, such as skilled nursing facilities, for medical or surgical conditions." [ECF No. 19 ¶ 77].[2]

The Defendants argue that the plan covers both acute and subacute mental health treatment in residential programs, but that Plaintiffs' request was denied because Jane was receiving treatment at La Europa, which was an educational program. [ECF No. 23-1 at 21–22]. On the other hand, the Defendants assert that they are not required to provide coverage for

---

[2] The Plaintiffs have additionally provided a letter from a potential class member in which the Defendants explain to plan members that "the services requested are being rendered as part of Sub-Acute Residential Services. Therefore, services rendered in this setting are specifically excluded from coverage . . . . The other levels of care you may qualify for are: an inpatient psychiatric stay, acute residential treatment, partial hospital program, an intensive outpatient program and outpatient services provided by a clinician with an appropriate license." [ECF No. 24-2 at 2–3]. In considering the motion to dismiss, however, the Court will not consider such extrinsic evidence and will limit itself to the complaint and the documents attached to and incorporated by reference in the complaint. See Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008).

subacute mental health treatment and need only cover "intermediate acute residential treatment." [Id. at 22]. Explain significance [ Tom – I think you missed this one]

The parties therefore ask the Court to determine which kind of medical and surgical treatment should be considered as an analog for purposes of coverage under the Parity Act. See, e.g., [ECF No. 25 at 19 ("Plaintiffs' allegations that the 'subacute' analogues to the care Jane received at La Europa Academy are rehabilitation hospitals and skilled nursing facilities are purely conclusory, and thus insufficient."). Other courts have found that an argument "concern[ing] the process and factors by which [a] nonquantitative treatment limitation could even be applied both to mental health benefits and medical/surgical benefits . . . needs to be resolved as the case proceeds after the benefit of discovery." Vorpahl, 2018 WL 3518511, at *3. In Vorpahl v. Harvard Pilgrim Health Insurance, where Harvard Pilgrim had denied coverage for a wilderness therapy program, Judge Casper rejected Harvard Pilgrim's argument that the court could specifically consider whether Harvard Pilgrim would have covered a wilderness medical/surgical program, and not more generally compare a wilderness therapy mental health setting with a skilled nursing or rehabilitation medical setting. Id. Judge Casper found that the determination of whether the exclusion could be applied to both mental health benefits and medical/surgical benefits was fact-specific and therefore inappropriate at the motion to dismiss stage. Id. Similarly, in order to determine whether the Defendants would have provided coverage for analogous medical/surgical treatment, the Court would need to determine, as a factual matter. which medical/surgical treatments could be considered analogous, which is not appropriate at this stage.

The Court finds the complaint has effectively pled that the Defendants provide coverage for subacute medical and surgical treatment, but deny coverage for comparable mental health

treatments, and that Jane's claim was denied because she was seeking subacute mental health treatment. The Plaintiffs are therefore entitled to discovery regarding whether the Defendants covered analogous medical and surgical treatment.

2. Whether the Plaintiffs Can Seek Relief Under Both § 1132(a)(1)(B) and § 1132(a)(3)

The Defendants next argue that the Plaintiffs' complaint must be dismissed because they are seeking duplicative relief by pursuing claims under both § 1132(a)(1)(B) and § 1132(a)(3). [ECF No. 23-1 at 22]. The Plaintiffs respond that they are seeking equitable relief under § 1132(a)(1)(B), including "specific performance" and "injunctive relief," that would require the Defendants to conform with the Parity Act on a class-wide basis. [ECF No. 24 at 18–20]; see, e.g., N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Group, 798 F.3d 125, 135 (2d Cir. 2015) (finding that the district court erred in dismissing a claim that was seeking both monetary compensation for losses stemming from a denial of coverage and injunctive relief prohibiting future coverage denials).

Under § 1132(a)(3), "a participant, beneficiary, or fiduciary" may sue "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." The section acts as "a safety net, offering appropriate equitable relief for injuries caused by violations that [29 U.S.C. § 1132] does not elsewhere adequately remedy." Varity Corp. v. Howe, 516 U.S. 489, 512 (1996).

"[T]he availability of adequate relief under section 1132(a)(1)(B) to recover benefits due under the terms of a plan bars a separate claim for breach of fiduciary duty under section 1132(a)(3) as a matter of law." Shaffer v. Foster-Miller, Inc., 650 F. Supp. 2d 124, 127 (D. Mass. 2009). Generally, where a plaintiff "can pursue benefits under the plan pursuant to

[§ 1132(a)(1)], there is an adequate remedy under the plan which bars a further remedy under [§ 1132(a)(3)]." LaRocca v. Borden, Inc., 276 F.3d 22, 28 (1st Cir. 2002).

Other circuits that have considered the issue have found that "a plaintiff may plead claims under both § 1132(a)(1)(B) and § 1132(a)(3) at the motion to dismiss stage, so long as the plaintiff does not actually recover under both theories." Trovato v. Prudential Ins. Co. of Am., No. 17-cv-11428, 2018 WL 813368, at *3 (D. Mass. Feb. 9, 2018) (citing Moyle v. Liberty Mut. Ret. Ben. Plan, 823 F.3d 948, 961 (9th Cir. 2016), as amended on denial of reh'g and reh'g en banc (Aug. 18, 2016); N.Y. State Psychiatric, 798 F.3d at 134; Silva v. Metro. Life Ins. Co., 762 F.3d 711, 726 (8th Cir. 2014)). Because the Court cannot determine at the motion to dismiss stage whether Plaintiffs will be able to recover on their claim under § 1132(a)(1)(B), it would be premature to dismiss Plaintiffs' claim under § 1132(a)(3). Defendants' motion to dismiss is therefore denied insofar as it seeks to dismiss the Plaintiffs' claims as duplicative.

### D. Count III: Claim for Attorneys' Fees and Costs Under 29 U.S.C. § 1132(g)(1)

"ERISA's fee-shifting provision permits a district court to 'allow a reasonable attorney's fee and costs of action' for an 'action under this subchapter . . . by a participant, beneficiary, or fiduciary." Merit Constr. Alliance v. City of Quincy, 759 F.3d 122, 132 (1st Cir. 2014) (quoting 29 U.S.C. § 1132(g)(1)). It is undisputed that, if Plaintiffs prevail in this action, the Court has discretion to award attorneys' fees. See [ECF No. 23-1 at 24; ECF No. 25 at 24]. Defendants argue that the Court must dismiss Count Three of Plaintiffs' complaint, however, because 29 U.S.C. § 1132(g)(1) does not provide a separate cause of action. [ECF No. 25 at 24].

Generally speaking, a request for attorneys' fees is not an independent cause of action, but is rather a remedy that the Court may award in its discretion. See, e.g., South Port Marine, LLC v. Gulf Oil Ltd. Partnership, 234 F.3d 58, 64 (1st Cir. 2000) ("Punitive damages . . . do not constitute a separate cause of action, but instead form a *remedy* available for some tortious or

otherwise unlawful acts. Consequently, plaintiff's claim for punitive damages must relate to some separate cause of action which permits recovery of punitive damages."); <u>Fisk v. Mid Coast Presbyterian Church</u>, No. 2:16-cv-00490, 2017 WL 1755950, at *2 (D. Me. May 4, 2017) (dismissing a complaint count seeking attorneys' fees after the plaintiff conceded that an allegation of attorneys' fees is "properly considered as [a] prayer[] for relief, rather than [an] independent cause[] of action."); <u>Rhodes v. Ocwen Loan Servicing, LLC</u>, 44 F. Supp. 3d 137, (D. Mass. 2014) (finding that a claim for punitive damages, attorneys' fees, and damages under the Fair Debt Collection Practices Act was not an "independent cause[] of action" and denying a motion to amend the complaint). In certain specific instances, however, courts treat a complaint seeking attorneys' fees as a separate cause of action. For example, a party may file an independent cause of action under the Individuals with Disabilities Education Act ("IDEA") if they prevailed in an administrative proceeding. <u>See</u> <u>Doe v. Boston Public Schools</u>, 80 F. Supp. 3d 332, 340 (D. Mass. Jan. 23, 2015) ("An IDEA claim for attorneys' fees is essentially an independent cause of action employing <i>de novo</i> fact finding and independent legal analysis uninflected by doctrines of deference to an administrative agency . . . .").

The First Circuit has not held that ERISA's fee-shifting provision provides a separate cause of action. In <u>Fortier v. Hartford Life & Accident Insurance Co.</u>, the district court considered a claim alleging wrongful termination of long-term disability benefits, as well as an independent count seeking attorneys' fees. No. 16-cv-00322, 2018 WL 3542863, at *1–2 (D.N.H. July 23, 2018). Because the court granted judgment on the administrative record to the defendant insurance company, the court dismissed count four of the complaint, which sought attorneys' fees. <u>Id.</u> at *12. On appeal, the First Circuit explained that the complaint had been amended to add a request for attorneys' fees. <u>See</u> <u>Fortier v. Hartford Life & Accident Ins. Co.</u>,

916 F.3d 74, 80 (1st Cir. 2019) (acknowledging that the plaintiff "filed a two-count complaint" and that "Count Two sought attorneys' fees and costs under 29 U.S.C. § 1132(g)(1)").

Because the Court does not dismiss Counts One or Two of the complaint, it will not dismiss Plaintiffs' demand for attorneys' fees.  See, e.g., Magasrevy v. Retirement Committee, No. 15-cv-62143, 2016 WL 1321406, at *6 (S.D. Fl. Apr. 5, 2016) ("While Defendants' point [that an action for attorney's fees is not an independent cause of action] is valid with respect to the form of Plaintiff's pleading, Defendants correctly recognize that ERISA permits an award of attorney's fees in a case (like this one) brought by a plan participant or beneficiary.  Therefore, rather than dismissing Count V, the Court will construe it as a request for attorney's fees in addition to the other relief sought in the Complaint." (internal citation omitted)); Professional Orthopedic Assocs., Pa., Cohen v. Horizon Blue Cross Blue Shield of N.J., No. 14-cv-4731, 2015 WL 5455820, at *5 (D.N.J. Sept. 16, 2015) ("While Horizon is correct that the statute does not create an independent cause of action for attorney's fees, ERISA does provide for such awards to parties that prevail on a cause of action authorized by the statute.  As Plaintiffs . . . may proceed on their ERISA § 502(a)(1)(B) claim, the Court will not dismiss Count III, which the Court construes as a demand for an attorneys' fee award.").  But see Johnston v. Aetna Life Ins. Co., No. 17-cv-20996, 2018 WL 2021335, at *7 n.5 (S.D. Fl. Mar. 1, 2018) ("While 29 U.S.C. section 1132(g)(1) permits recovery of attorney's fees and costs under ERISA, it does not, itself, create an independent cause of action."); Ranke v. Sanofi-Synthelabo, Inc., No. 04-cv-1618, 2004 WL 2473282, at *7 (E.D. Pa. Nov. 3, 2004) ("Count Five, requesting attorney's fees and costs pursuant to ERISA § 502(g)(1), must be dismissed because it fails to state an independent cause of action, but may properly be pled in Plaintiffs' Prayer for Relief." (citing 29 U.S.C. § 1132(g)(1)).  The Court notes that Plaintiffs' demand for attorneys' fees is dependent

upon Counts One and Two of the complaint.  If the Court were to dismiss those claims, then the request for attorneys' fees would be denied.  <u>See, e.g.</u>, <u>Fortier</u>, 2018 WL 3542863, at *1–2.

## V.       CONCLUSION

Accordingly, Defendants' motion to dismiss, [ECF No. 23], is <u>DENIED</u>.  As with most ERISA cases, Count One of Plaintiffs' complaint will depend on the specific factual circumstances of this case, making dismissal inappropriate.  Likewise, it would be inappropriate to dismiss Count Two of the complaint, as the Plaintiffs may plead claims under both § 1132(a)(1)(B) and § 1132(a)(3), so long as they do not ultimately recover under both theories. Finally, the Court understands Count Three to be a request for attorneys' fees in addition to the other relief sought in the complaint and therefore will not dismiss the count.

**SO ORDERED.**

March 30, 2020                                            /s/ Allison D. Burroughs
                                                         ALLISON D. BURROUGHS
                                                         U.S. DISTRICT JUDGE